JUDGE McMAHON

BROWN RAYSMAN MILLSTEIN FELDER & STEINER LLP
Jean L. Schmidt [JLS-1219]
900 Third Avenue
New York, NY 10022
Attorneys for Plaintiff

05 CV 4890

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------x

DIANE J. GREBLE,                                    :        Civil Action No.:

                              Plaintiff,           :

            v.                                      :

ROBERT BONDI, individually and in                  :        **COMPLAINT AND JURY DEMAND**
his capacity as County Executive of the
County of Putnam, CARL LODES, individually         :
and in his capacity as County Attorney of the
county of Putnam and THE COUNTY                     :
OF PUTNAM,
                                                    :
                              Defendants.
                                                    :

------------------------------------x

RECEIVED
MAY 20 2005
U.S.D.C. S.D.N.Y.
CASHIERS

Plaintiff Diane J. Greble, residing at 299 Millwood Road, Chappaqua, New York

10514, by way of complaint against Defendants Robert Bondi, Carl Lodes, and the County of

Putnam, alleges as follows:

## PARTIES

1.      Diane J. Greble ("Mrs. Greble" or "Plaintiff") is a citizen of the State of

New York. Mrs. Greble was engaged by Defendants as an independent contractor on or about

September 14, 1995. Defendants changed her status to an employee on or about December 3,

1997. By letter dated December 17, 2004 from Defendant Robert Bondi, Mrs. Greble was

notified that her employment was terminated.

2.      Defendant Robert Bondi is the County Executive of the County of Putnam ("Bondi").  Bondi is sued in his individual and official capacities.  He maintains an office at 40 Gleneida Avenue, Carmel, New York 10512.

3.      Defendant Carl Lodes is the County Attorney of the County of Putnam ("Lodes") and the Chief Legal Officer of the County.  Lodes is sued in his individual and official capacities.  He maintains an office at 40 Gleneida Avenue, Carmel, New York 10512.

4.      Defendant County of Putnam is a municipal corporation of the State of New York with a principal office at 40 Gleneida Avenue, Carmel, New York 10512.

## JURISDICTION AND VENUE

5.      The federal question jurisdiction of this Court is invoked pursuant to 28 U.S.C.§§ 1331, 1343(a)(4), 42 U.S.C. § 12101, 29 U.S.C. § 2601, and 42 U.S.C. § 1983.

6.      The supplemental and pendent jurisdiction of this Court over state law claims is invoked pursuant to 28 U.S.C. § 1367(a).

7.      Venue is proper within this District pursuant to 28 U.S.C. §§ 1391(c) because the unlawful practices complained of herein occurred within the Southern District of New York.

8.      Injunctive and declaratory relief, damages and other appropriate legal and equitable relief are sought pursuant to the Constitution of the United States, 42 U.S.C. §§ 1983, 1988; the Americans with Disabilities Act of 1990, 42 U.S.C. § 12101, *et seq.* ("ADA"); The Family and Medical Leave Act, 29 U.S.C. § 2601 *et seq.* ("FMLA"); the New York Human Rights Law, NY CLS Exec § 296 *et seq.* (McKinney 2005) ("NYHRL"); the New York Civil Service Law, § 75-b (McKinney 2004) ("§ 75-b"); Fair Labor Standards Act, 29 U.S.C. § 207 (o)(1) *et seq.* ("FLSA"); and under several contract and tort claims.

2

## FACTUAL BACKGROUND

### A.    Mrs. Greble is Mischaracterized As An Independent Contractor

9.    On or about September 14, 1995, Mrs. Greble was engaged by Defendants to serve as the Mental Retardation/Developmental Disability Coordinator.

10.    Mrs. Greble was engaged as an independent contractor, and issued a Form 1099, during the period September 14, 1995 through December 31, 1997, at which time Defendants reclassified her as an employee.

11.    On information and belief, because Mrs. Greble satisfied all the criteria to be an employee, the Defendants unlawfully mischaracterized her as an independent contractor during the period September 1995 to December 31, 1997.

12.    By mischaracterizing her as an independent contractor rather than as an employee, Defendants avoided providing her with benefits, and credit towards retirement benefits, and avoided withholding and remitting the employer share of payroll and social security taxes and retirement benefits, and other financial benefits, all to her pecuniary detriment.

13.    On information and belief, Defendants have followed a pattern or practice of misclassifying workers as independent contractors rather than employees.

### B.    Mrs. Greble Is Employed By The County

14.    In or about December 1997, Mrs. Greble was offered and accepted employment by the County as MR/DD Coordinator.   Her duties and responsibilities and reporting relationship remained the same.

15.    On or about January 1, 2001, Mrs. Greble was appointed to full time employment as Coordinator of the Office of People with Disabilities for the County of Putnam (the "Disability Office").   In that capacity, she reported directly to Michael Piazza, who at all material times was and is the Commissioner of Social Services for the County of Putnam ("The

3

Commissioner"). Mrs. Greble served as Coordinator until Defendant Bondi terminated Mrs. Greble's employment by letter dated December 17, 2004.

**C.**   **Mrs. Greble's Outstanding Record Of Performance And Approved Flexible Work Schedule**

16.   During her employment by the Defendants, Mrs. Greble received numerous commendations and awards, substantially increased the services Defendants were offering to its residents with disabilities, and significantly improved the quality of life of many residents with people with disabilities.

17.   Mrs. Greble received excellent performance reviews throughout her employment.

18.   Among her accomplishments and achievements were the following: developing a disability resources guide for Putnam County, creating the Annual Resources for Living Fair, planning and organizing the Annual Legislative Forum for People with Disabilities, and bringing in grant funded programs to Putnam County.

19.   At no time prior to November 29, 2004 was Mrs. Greble subject to any discipline, reprimands, punishment or adverse employment action of any kind.

20.   Mrs. Greble had no express employment agreement and was not a member of any unit of persons represented by any union. Mrs. Greble was in a management position.

21.   Commencing in 2002 and continuing thereafter, Mrs. Greble had received permission from the Commissioner to work a flexible schedule, including working from home, in the evenings, on weekends and holidays, provided she accomplished the overall goals of her position in a timely manner. Mrs. Greble was a manager who received very little direct supervision and often worked more than thirty-five (35) hours per week.

4

22.     During her almost ten (10) years of employment with the County, Mrs. Greble had never been docked or criticized in any way for the time she worked, her paper work or the expenses she received.  The Commissioner noted that Mrs. Greble often worked more hours than she was paid for.

**D.      Mrs. Greble's Husband Becomes Disabled**

23.     In 2003, Mrs. Greble's husband suffered a series of heart attacks and various other medical problems for which he was hospitalized for many months and which left him disabled.

24.     During this time, Mrs. Greble renewed her understanding with the Commissioner that she could work a flexible weekly schedule in order to allow her to fulfill her responsibilities at work and to provide care for her disabled husband.

25.     Mr. Greble remained disabled and suffering from a serious health condition through and including December 17, 2004, and thereafter.

**E.      Mrs. Greble Complains The County Is Not In Compliance With The ADA**

26.     As part of her duties as Coordinator of the Disability Office, commencing in the summer of 2004 and continuing until her employment was terminated, Mrs. Greble repeatedly communicated to Defendants that the County was not in compliance with the ADA in a variety of respects, including, but not limited to:

- Defendants' failure to develop and maintain a plan as required by the ADA.

- Defendants' failure to provide adequate numbers of handicapped parking spaces at the County Office Building.

- Defendants' failure to make the County Office Building accessible to persons with disabilities.

- Defendants failure and refusal to devote sufficient resources to the Disability Office to enable it to perform its responsibilities to the persons with disabilities throughout Putnam County.

27.    On information and belief, Defendants did not wish to devote sufficient resources to the Disability Office or incur the expense of complying with the ADA, and were displeased with Mrs. Greble's efforts.

28.    On information and belief, Defendant Bondi is notorious for running a frugal administration, and had devoted scant resources to the disabled community prior to 2003.

29.    As a result of Mrs. Greble's active and ongoing growth of the services provided by the Disability Office, the amount and percentage of County funds allocated to assisting persons with disabilities increased during Mrs. Greble's time as Coordinator.

## F.    Mrs. Greble's Assistance To and Speech About A Person With A Disability

30.    In her capacity of Coordinator, Mrs. Greble's responsibilities included providing counsel and advice to disabled individuals residing in Putnam County.

31.    On information and belief, one such Person ("the Person") had continuing disputes with the Defendants and the County Department of Social Services ("DSS") regarding its treatment of her, her property and affairs.  The Person has been involved in legal proceedings against the County DSS and some of the allegations she has made involve persons with political, legal and business relationships with Defendants.  Her struggle with the County and politically connected persons has been the subject of media reports, and her situation is widely viewed in Putnam Count as a scandal.

32.    The Person is a member of the Putnam County Coordinating Council for People with Disabilities, an advisory committee created by the Putnam County Legislature to

6

provide advice and counsel to the County Legislature regarding issues and concerns of people with disabilities.

33.    In her capacity as Coordinator of the Disability Office, Mrs. Greble worked closely with the Coordinating Council.

34.    On information and belief, in January 2004 the Person commenced a legal proceeding against Defendants Bondi, County of Putnam and the Commissioner alleging that they were guilty of violating her rights and denying her access to her own funds.

35.    Commencing in mid to late 2004, Mrs. Greble has spoken on behalf of the Person to the Commissioner and subordinates of the Commissioner, and is perceived by Defendants to be supportive of the Person.

36.    In September 2004, a lengthy exposè of the Person's scandal and related issues was published in the Journal News, the principal daily newspaper serving Putnam County.

37.    Shortly after that article appeared, the Person sought Mrs. Greble's assistance as Coordinator to intervene with the DSS and release some of the Person's funds being held by the County.  Mrs. Greble contacted the DSS to assist her, and had meetings with the Person in her office to counsel her regarding her rights as a disabled person.

38.    Shortly after Mrs. Greble had contacted the DSS on the Person's behalf, representatives of the DSS made an unscheduled appearance at Mrs. Greble's office in approximately October 2004.  They made damaging allegations against the Person, defended their decisions about her and sought to dissuade Mrs. Greble from providing any further help or assistance to the Person.

39.     Mrs. Greble informed the DSS representatives that she believed the Person appeared to have legitimate complaints against the County and that the Person should be allowed to use her own funds being held by the DSS.

40.     Mrs. Greble did not agree to cease counseling the Person.   Providing assistance and counsel to Putnam County residents with disabilities was a key responsibility of Mrs. Greble.

41.     Throughout 2004, Mrs. Greble continued to press the Defendants to come into compliance with the ADA, but Defendants failed and refused to do so.

**G.    Defendants Summarily Terminate Mrs. Greble In Violation Of Her Rights And In Retaliation For Her Exercising Her Rights**

42.     On the Wednesday before Thanksgiving Day 2004, the Commissioner directed Mrs. Greble to report to the Office of the County Attorney and Defendant Lodes on the Monday immediately after the Holiday.   The Commissioner refused her requests for information about the substance of the meeting, so she could not prepare.   The Commissioner had not directed Mrs. Greble to appear at any other meeting without informing her of the purpose of the meeting.

43.     This unprecedented and unexplained summons to the County's Chief Legal Officer caused Mrs. Greble considerable distress and mental anguish over what should have been a festive holiday weekend.

44.     Mrs. Greble had never before been summoned to a meeting with Defendant Lodes prior to that date.

45.     When Mrs. Greble appeared as required on the Monday after Thanksgiving, she was confronted with a rough, hostile and intimidating interrogation by Defendant Lodes.

46.     At that meeting on November 29, 2004, Defendant Lodes told Mrs. Greble that Defendant Bondi had allegedly received a complaint about her, and that Defendants had conducted a surreptitious investigation of her. Defendant Lodes refused to reveal the identity of this alleged informant or the investigator.

47.     Defendant Lodes informed Mrs. Greble that Defendants' investigation revealed a "problem" with her for three days, July 21, August 13 and August 27, 2004. At the November 29 meeting, he demanded that she immediately account for her whereabouts on those days. Lodes used his position as County Attorney and Chief Legal Officer to intimidate and frighten her.

48.     Mrs. Greble was unable to recall what she had done on those three days several months earlier.

49.     By November 29, 2004, Mrs. Greble had worked approximately 2000 days for the County, and no one had ever questioned her dedication, hard work and valuable accomplishments.

50.     Defendant Lodes directed Mrs. Greble to report back to him in two hours with her explanation for what had occurred on those days.

51.     Mrs. Greble returned to Defendant Lodes office as required in two hours and gave him such information as she could gather about those three days on such insufficient short notice. She was extremely upset and anxious over the manner in which he was treating her after almost ten years of dedicated service.

52.     Defendant Lodes then directed Mrs. Greble to return to his office for further questioning on the next day.

**H.**      **Defendant Lodes Threatens Mrs. Greble With Criminal Prosecution**

53.      On that same evening (November 29) Mrs. Greble prepared a letter explaining, as best as she could on such short notice without access to records, and while under great stress, her activities on the three days about which Defendant Lodes had questioned her. Mrs. Greble presented the letter to Defendant Lodes on Tuesday, November 30, with some supporting documentation.

54.      During the November 30 meeting, Defendant Lodes told her that her "unlawful acts" were felonies and she could be subject to prosecution.   Mrs. Greble was extremely upset by this threat.

55.      Mrs. Greble's request for counsel at that meeting when accused of a felony was ignored.  Mrs. Greble was frightened and intimidated by this meeting and Defendant Lodes' repeated references to her "criminal conduct."  Defendant Lodes stated to her in the Commissioner's presence that her explanation for what had occurred on July 21 and August 27 was satisfactory, and the only remaining issue was an expense voucher for August 13, 2004.

56.      At the conclusion of the November 31 meeting, Defendant Lodes directed Mrs. Greble to appear for a third day of interrogation on Wednesday, December 1, 2004.

57.      During the December 1 meeting, Defendant Lodes repeated that her expense voucher for August 13, 2004 remained the only problem, and reiterated that the mistaken expense report was a felony for which she could be prosecuted.  At that meeting, Mrs. Greble explained that she had mistakenly submitted an expense voucher for a trip to a meeting in Albany she originally thought was scheduled for August 13, and that she had not submitted an expense voucher for the trip she did take to Albany on the following week, August 20, 2004.  The amount of the voucher was approximately $70.00.

58.     During her almost ten years of service, Mrs. Greble had submitted hundreds of Expense and Mileage Reimbursement requests with no objection from the County.

59.     After again warning her that her incorrect expense voucher was a crime, Defendant Lodes told her she should resign her employment.   Mrs. Greble was shocked and dismayed by this statement.   The Commissioner offered to meet with Mrs. Greble to write a positive reference letter and to discuss her options.   He assured her that he knew she was an excellent employee.   He told her he could meet with her on December 3.   Mrs. Greble was extremely distressed and worried by the pressure being placed on her to resign and Lodes' repeated references to her alleged criminal conduct.

60.     On Friday, December 3, Mrs. Greble met with the Commissioner. Mrs. Greble broke down and cried in the Commissioner's presence due to the overwhelming stress and embarrassment of this episode and her fear of criminal prosecution.

61.     During the December 3 meeting, Mrs. Greble asked the Commissioner why he had not spoken up to help her in the meetings with Defendant Lodes because the Commissioner was aware of her diligent service, long hours and agreed upon flexible schedule. The Commissioner replied that "I am also an at will employee, and Bondi can fire me at any time too."

## I.    Mrs. Greble Explores Her Options And Submits An FMLA Leave Request

62.     Mrs. Greble did not resign on that day (or at any other time).   Instead, the Commissioner told her to use some of her accumulated compensatory time over the next days to consider options such as resignation or retirement.   He repeated his offer to write her a positive letter of reference if she chose to resign.

63.     On or about Monday, December 6, 2004, at the Commissioner's suggestion, Mrs. Greble visited the New York Retirement System office to ascertain whether she had sufficient service credit and whether retirement was otherwise a viable alternative.

64.     Mrs. Greble concluded retirement was not a viable option for her.

65.     On December 7, 2004, while still using her comp time as suggested by her Commissioner, Mrs. Greble met with the Commissioner in his office again to advise him that retirement was not a viable option for her, and to give him a copy of her written request for an FMLA leave of absence to care for her disabled husband who was suffering a serious health condition.

66.     During the meeting on December 7, 2004, Mrs. Greble was presented with and asked to sign the voucher for her mid-November mileage reimbursement log. Mrs. Greble signed it and returned it to the Commissioner's assistant in the Commissioner's presence. On information and belief, that voucher and mileage reimbursement log would substantiate certain of Mrs. Greble's claims, and the County's inexplicable inability to locate those documents should lead the Court to draw an adverse inference against the County.

67.     Mrs. Greble has not been reimbursed for those expenses including $322 for unreimbursed mileage expenses, and she is entitled thereto, together with interest, costs and reasonable attorneys fees.

68.     It appeared to Mrs. Greble from the meetings with the Commissioner and Defendant Lodes that she would no longer be able to work the flexible schedule she required. On December 3, 2004 and December 7, 2004 she reviewed with the Commissioner some of her pending work in anticipation of her FMLA leave. Mrs. Greble delivered a copy of her request

for a FMLA leave to the Commissioner on December 7, 2004. Defendants ignored this request, causing Mrs. Greble to suffer additional needless emotional distress.

69.     Mrs. Greble received no written or formal response to her request for FMLA leave from Bondi or any other County official.

70.     Commissioner Piazza informally let Mrs. Greble know by telephone on or about December 8 or 9, that Defendant Lodes had advised him the County did not intend to grant her leave request because Bondi might want to terminate her in the future, and he would not be able to do so if she was on a leave of absence.

71.     Because she had received no response to her FMLA request, and was still using her accumulated compensatory time, and remained worried by Defendant Lodes' threats of criminal prosecution, by letter dated December 13, 2004 to Bondi, Mrs. Greble offered to reach an amicable agreement with the County on a confidential basis.

## J.     Defendant Bondi Terminates Mrs. Greble's Employment

72.     By letter dated December 17, 2004 and delivered to Mrs. Greble's home on Saturday December 18, one week before Christmas Day, Defendant Bondi notified Mrs. Greble that he rejected all of her proposals and summarily dismissed her from her employment. This came as a complete shock to Mrs. Greble.

73.     At no time did Defendant Bondi meet with or speak with Mrs. Greble before terminating her employment by mail.

74.     It was unnecessary and cruel for Defendant Bondi to terminate Mrs. Greble's employment immediately prior to the Christmas holidays at a time she was using her accumulated comp days and had a request for a medical leave pending.

13

75.     Defendants maliciously refused to pay Mrs. Greble her accumulated and earned compensatory time, sick days, personal days, and business expenses, thereby compounding the emotional distress Mrs. Greble suffered.

76.     By virtue of the foregoing, Defendants, and each of them, inflicted severe emotional distress upon Mrs. Greble.  Defendants maliciously abused, intimidated and frightened her in order to achieve their own personal and political goals unrelated to her performance as Coordinator of the Disability Office.

77.     In the context of (a) Mrs. Greble's almost ten years of diligent and extraordinary service to the County; (b) her well known and vigorous advocacy for people with disabilities, her long term, well-known and approved flexible work schedule; and (c) her complaints about ADA violations and her assistance to the person with a disability, her alleged recordkeeping errors on three days out of thousands she worked and one premature mileage reimbursement report of the hundreds she submitted which she voluntarily cured were not sufficiently serious to warrant the Defendants' investigation, interrogation and termination of her employment.  Defendants claim to have terminated her for the reasons they advanced, and the manner in which they did so, confirms that the reasons were pretexts, unworthy of credence, which Defendants used to conceal an unlawful intent by Defendants to remove Mrs. Greble from her employment for unlawful and retaliatory reasons.

## COUNT ONE

## (RETALIATION IN VIOLATION OF THE ADA)

78.     Plaintiff repeats each and every allegation stated above as if set forth at length herein.

79.     Mrs. Greble had a reasonable and good faith belief that Defendants were in non-compliance with and were in violation of the ADA.

14

80.    Mrs. Greble's internal complaints to Bondi and the County regarding the Defendants non-compliance with the ADA during 2004 was protected activity pursuant to 42 U.S.C. § 12203 *et seq.*

81.    Defendant Bondi made the decision to retaliate against Mrs. Greble for her complaints. Bondi's conduct was outside the scope of his legitimate authority, egregious, willful and wanton and in reckless disregard of Mrs. Greble's rights, for which punitive damages from him personally are appropriate, in addition to remedies against the other Defendants.

82.    Defendants unlawfully harassed and retaliated against Mrs. Greble, and terminated her employment in violation of 42 U.S.C. § 12203.

83.    On or about February 1, 2005, Mrs. Greble filed a charge of discrimination with the Equal Employment Opportunity Commission ("Commission") against the Defendants alleging a violation of the ADA.

84.    On or about February 28, 2005, Mrs. Greble received a right to sue letter from the Commission dated February 23, 2005, and this action is being commenced within ninety (90) days thereof.

85.    As a result of Defendants' actions, Mrs. Greble has suffered injuries, including but not limited to emotional distress, physical distress, humiliation, embarrassment and pain and suffering and certain associated physical symptoms and injuries, as well as a loss of income and benefits.

**WHEREFORE**, plaintiff seeks Judgment against Defendants, and each of them, awarding her reinstatement, front and back pay, four million dollars in compensatory damages and punitive damages, counsel fees, costs and interests, or such other damages as the proof at

trial will establish, and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT TWO

### (RETALIATION IN VIOLATION OF THE NYHRL)

86.     Plaintiff repeats each and every allegation stated above, as if set forth at length herein.

87.     Mrs. Greble's internal complaints to Defendants that the County was violating the laws prohibiting discrimination against persons with disabilities by refusing to make the County Office building accessible to and usable by people with disabilities is conduct that is protected by the NYHRL §296 3-a(c).

88.     Defendants unlawfully harassed and retaliated against Mrs. Greble and terminated her employment because of her protected conduct, in violation of the NYHRL §296 3-a(c).

89.     As a result of Defendants' actions, Mrs. Greble has suffered injuries, including but not limited to emotional distress, physical distress, humiliation, embarrassment and pain and suffering, certain associated physical symptoms and injuries, as well as a loss of income and benefits.

**WHEREFORE**, plaintiff seeks Judgment against Defendants, and each of them, awarding her reinstatement, front and back pay, four million dollars in compensatory damages and punitive damages, counsel fees, costs and interests, or such other damages as the proof at trial will establish, and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT THREE

## RETALIATION FOR EXERCISING HER CONSTITUTIONAL RIGHTS

90.     Plaintiff repeats each and every allegation stated above, as if set forth at length herein.

91.     Mrs. Greble has the right under the First Amendment to the United States Constitution to speak about matters of public concern without fear of retaliation by Putnam County, Bondi, Lodes or any person acting on their behalf.

92.     Mrs. Greble exercised her constitutional right by advising, counseling, and speaking on behalf of the disabled Person who came to her for assistance in and during 2004.

93.     Defendants harassed Mrs. Greble, retaliated against her, and terminated her employment in retaliation for her exercise of her free speech rights, for fear that she would directly or indirectly help the disabled Person in her public struggle and litigation against the County DSS.

94.     Terminating a public employee for exercising her right to free speech over a matter of public concern violates 42 U.S.C. § 1983.

95.     As a result of Defendants' actions, Mrs. Greble has suffered injuries, including but not limited to emotional distress, physical distress, humiliation, embarrassment and pain and suffering, certain associated physical symptoms and injuries, as well as a loss of income and benefits.

**WHEREFORE**, plaintiff seeks Judgment against Defendants, and each of them, awarding her reinstatement, front and back pay, four million dollars in compensatory damages and punitive damages, counsel fees, costs and interests, or such other damages as the proof at

trial will establish, and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT FOUR

### VIOLATION OF FMLA

96.     Plaintiff repeats each and every allegation stated above, as if set forth at length herein.

97.     On or about December 6, 2004, Mrs. Greble applied for an FMLA leave of absence to care for her disabled husband who was continuing to suffer from a serious health condition.

98.     Mrs. Greble worked at least 1,250 hours over the preceding 12 months, and the County of Putnam employs 50 or more employees.

99.     Mrs. Greble was eligible for and entitled to a leave of absence in accordance with the FMLA.

100.    Mrs. Greble was terminated eleven (11) days after she made her leave request.

101.    Defendants, and each of them, ignored that request and retaliated against Mrs. Greble by terminating her employment in violation of 29 U.S.C. §2601 *et seq*.

102.    As a result of Defendants actions, Mrs. Greble has suffered injuries, including but not limited to emotional distress, physical distress, humiliation, embarrassment and pain and suffering, certain associated physical symptoms and injuries, as well as a loss of income and benefits.

**WHEREFORE**, plaintiff seeks Judgment against Defendants, and each of them, awarding her reinstatement, front and back pay, four million dollars in compensatory damages

and punitive damages, counsel fees, costs and interests, or such other damages as the proof at trial will establish, and such other relief as the Court deems just and appropriate under the circumstances.

### COUNT FIVE

### VIOLATION OF CIVIL SERVICE LAW § 75-b

103.    Plaintiff repeats each and every allegation stated above, as if set forth at length herein.

104.    Mrs. Greble had a reasonable and good faith belief that Defendants were in non-compliance with the ADA and the NYHRL.

105.    During 2004, Mrs. Greble advised Defendants of such non-compliance on several occasions.

106.    Mrs. Greble's conduct was protected by Civil Service Law § 75-b 2(a)(i) and (ii).

107.    By harassing Mrs. Greble and then terminating her employment because of these internal complaints, Defendants, and each of them, violated Mrs. Greble's rights under Civil Service Law § 75-b 2(a)(i) and (ii).

108.    As a result of Defendants actions, Mrs. Greble has suffered injuries, including but not limited to emotional distress, physical distress, humiliation, embarrassment and pain and suffering and certain associated physical symptoms and injuries, as well as a loss of income and benefits.

**WHEREFORE**, plaintiff seeks Judgment against Defendants, and each of them, awarding her reinstatement, front and back pay, four million dollars in compensatory damages and punitive damages, counsel fees, costs and interests, or such other damages as the proof at

trial will establish, and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT SIX

### VIOLATION OF FAIR LABOR STANDARDS ACT

109.    Plaintiff repeats each and every allegation stated above, as if set forth at length here.

110.    Defendants had a policy or practice of docking exempt managerial employees who worked less than 8 hours in a day, thereby converting these managerial employees to non-exempt employees under the Fair Labor Standards Act ("FLSA").

111.    As non-exempt employees under the FLSA, Mrs. Greble and her fellow non-exempt managers were entitled to receive time and one half of their regular rate of pay for each week they worked in excess of 40 hours or compensatory time off in an amount equal to 1.5 hours with pay for each hour they worked in excess of 40 hours per week.

112.    Defendants' failure and refusal to comply with the FLSA was wanton and willful and maliciously designed to avoid paying these employees the full amounts due to them under the FLSA and its implementing regulations.

**WHEREFORE**, Plaintiff demands declaratory and injunctive relief, retroactive payment of all unpaid overtime due her, liquidated damages, attorneys fees, interest and costs, and such other damages as the evidence at trial will show or the Court shall deem appropriate.

## COUNT SEVEN

### BREACH OF IMPLIED CONTRACT

113.    Plaintiff repeats each and every allegation stated above, as if fully repeated at length herein.

20

114.    As a managerial employee of Defendants, Mrs. Greble received a salary as well as compensatory time, sick time, and vacation pay for her services, and she accepted employment and continued employment in reliance upon the County's policy and practice of providing such benefits to managerial employees.

115.    When Defendants terminated Mrs. Greble's employment they maliciously refused to pay Mrs. Greble her accumulated and earned compensatory time, accumulated sick and personal days and $322 for unreimbursed mileage expenses.

116.    Defendants' willful refusal to pay Mrs. Greble was a breach of Mrs. Greble and Defendants' implied agreement, and in violation of Defendants' policy and practice with respect to managerial employees upon which Mrs. Greble had justifiably relied.

117.    As a result of Defendants actions, Mrs. Greble has suffered injuries, including but not limited to emotional distress, physical distress, humiliation, embarrassment and pain and suffering, certain associated physical symptoms and injuries, as well as a loss of income and benefits.

**WHEREFORE**, plaintiff seeks Judgment against Defendants, and each of them, awarding her accumulated compensatory time, unused sick and personal days, compensatory and punitive damages, counsel fees, costs and interests, or such other damages as the proof at trial will establish, and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT EIGHT

### BAD FAITH DISMISSAL

118.    Plaintiff repeats each and every allegation stated above, as if fully repeated at length herein.

119. During her employment by the Defendants, Mrs. Greble received numerous commendations and awards, substantially increased the services Defendants were offering to its residents with disabilities, and significantly improved the quality of life of many residents with people with disabilities.

120. Mrs. Greble received excellent performance reviews throughout her employment.

121. At no time prior to December 2004 was Mrs. Greble subject to any discipline, reprimands, punishment or adverse employment action of any kind.

122. Defendants' summary termination of Mrs. Greble's employment on December 17, 2004 was made in bad faith and in the absence of any genuine or legitimate dissatisfaction with Mrs. Greble's performance, in retaliation for her exercising her legal rights, in order to reduce the amount of resources the County was devoting to people with disabilities, and for other malicious and improper motives.

123. Defendants' summary termination of Mrs. Greble's employment for exercising her constitutional and statutory rights violated the public policy of this state as manifested in the laws and rules of this state to deter official misconduct, encourage employees to exercise their rights without fear of retaliation and to fulfill their legal duties to the constituents of the County for which they work.

**WHEREFORE**, plaintiff seeks Judgment against Defendants, and each of them, awarding her reinstatement, front and back pay, four million dollars in compensatory damages and punitive damages, counsel fees, costs and interests, or such other damages as the proof at trial will establish, and such other relief as the Court deems just and appropriate under the circumstances.

22

## COUNT NINE

### AGAINST DEFENDANT LODES AND BONDI
### <u>INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS</u>

124.    Plaintiff repeats each and every allegation stated above, as if fully repeated at length herein.

125.    By virtue of the foregoing, Defendants Lodes and Bondi, and each of them, intentionally inflicted emotional harm upon Mrs. Greble, without legal justification therefor.

126.    In so doing, they acted in their personal and individual capacities, outside the scope of their official positions, for personal, vindictive and political reasons.

127.    As a result of Defendants Lodes and Bondi's actions complained of herein, Mrs. Greble has suffered injuries, including but not limited to emotional distress, physical distress, humiliation, embarrassment and pain and suffering, certain associated physical symptoms and injuries, as well as a loss of income and benefits.

**WHEREFORE**, plaintiff seeks Judgment against Defendants Lodes and Bondi, and each of them, in their individual capacities, awarding her four million dollars in compensatory damages and punitive damages, counsel fees, costs and interests, or such other damages as the proof at trial will establish, and such other relief as the Court deems just and appropriate under the circumstances.

## COUNT TEN

### <u>ATTORNEYS FEES</u>

128.    Plaintiff repeats each and every allegation stated above, as if set forth at length herein.

129.    Mrs. Greble is entitled to receive from Defendants, and each of them, an award of her attorneys' fees and costs incurred herein pursuant to 42 U.S.C. § 1988 and pursuant to the statutes whose provisions Defendants violated as alleged above.

**WHEREFORE**, plaintiff seeks Judgment against Defendants, and each of them, awarding her an amount equal to the attorneys fees and costs incurred in the prosecution of this litigation.

### JURY DEMAND

Plaintiff hereby demands a trial by jury on all issues so triable.

**BROWN RAYSMAN MILLSTEIN
FELDER & STEINER LLP**
Attorneys for Plaintiff Diane J. Greble

By: _____
    Joan L. Schmidt, Esq.
    900 Third Avenue
    New York, NY  10022
    (212) 895-2000

Dated:  May 20, 2005